**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHRISTOPHER STEVENS,**

     **Petitioner,**

**vs.**                              **Case No. 4:11cv65-MP/CAS**

**SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,**

     **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

In February 2011, Petitioner Christopher Stevens, proceeding pro se, filed a 28 U.S.C. § 2254 petition, with attached exhibits and a memorandum. Doc. 1. After direction by this Court, Doc. 5, Petitioner filed an amended petition with attached exhibits, Doc. 6, on May 20, 2011. On October 17, 2011, Respondent filed an answer, with exhibits. Doc. 10. Petitioner has not filed a reply, although given the opportunity to do so. *See* Doc. 9.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the

undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## Procedural History

By second amended information filed February 16, 2004, in the Second Judicial Circuit, Leon County, in case number 2003-CF-3596, the State of Florida charged Petitioner Stevens with seven counts, in connection with events that took place on October 13, 2003:

> (1) armed robbery with a deadly weapon, a first degree felony, in violation of section 812.13(2)(a), Florida Statutes, involving victim Ronnie W. Chavis;
>
> (2) burglary of a structure with an assault or battery upon a person, a first degree felony, in violation of section 810.02(2)(a), Florida Statutes, involving victim Ronnie W. Chavis;
>
> (3) possession of a burglary tool, a third degree felony, in violation of section 810.06, Florida Statutes;
>
> (4) grand theft, a third degree felony, contrary to section 812.014(2)(c)1., Florida Statutes;
>
> (5) battery on a law enforcement officer, a third degree felony, in violation of section 784.07(2)(b), Florida Statutes, involving Officer Kathy Connell;
>
> (6) resisting an officer without violence, a first degree misdemeanor, in violation of section 843.02, Florida Statutes, involving Officer Shane Porter; and
>
> (7) criminal mischief causing damages over $200 and under $1000, a first degree misdemeanor, contrary to section 806.13(1)(b)2., Florida Statutes.

Doc. 10 Ex. A at 5-6; *see id.* at 1-2 (original information charging eight counts), 3-4 (amended information charging eight counts).  Stevens entered a plea of not guilty and proceeded to trial on February 19 and 20, 2004.  *See id.* at 14, Exs. B and C (trial transcript).  The jury found Stevens guilty as charged on Count 1, 2, 3, 4, 6, and 7, and not guilty on Count 5.  *See id.* Ex. A 28-30.  In a judgment and sentence entered April 29, 2004, the state trial court adjudicated Stevens guilty on Counts 1, 2, 3, 4, 6, and 7, and sentenced him to thirty (30) years in prison on Counts 1 and 2, sixty (60) months on Count 3, sixty (60) days on Counts 4 and 7, and eleven (11) months and 29 days on Count 6, with all sentences to run concurrent, and with credit for 199 days served.  *Id.* Ex. A at 34-42.

Stevens appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D04-2324, and counsel filed a brief pursuant to Anders v. California, indicating that no good faith argument could be made for reversal  *See id*. Ex. E.  Stevens filed a pro se Initial Brief.  *Id*. Ex. F.  The First DCA per curiam affirmed the case without an opinion on July 25, 2005.  *Id.* Ex. G; Stevens v. State, 908 So. 2d 1062 (Fla. 1st DCA 2005).  The First DCA issued the mandate on August 23, 2005. Doc. 10 Ex. G.

On November 21, 2005, Stevens filed a pro se petition for habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel, assigned case number 1D05-5647.  Doc. 10 Ex. H.  The First DCA denied the petition on the merits.  *Id*. Ex. J; *see* Stevens v. State, 929 So. 2d 1087 (Fla. 1st DCA 2006).  Stevens filed a motion for rehearing, which the First DCA denied by order dated May 30, 2006.  Doc. 10 Ex. K.

On April 24, 2006, Stevens filed a pro se motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850, raising seven (7) grounds, all claims of ineffective assistance of counsel (IAC). Doc. 10 Ex. L at 89-144. The State filed a response on August 7, 2006. *Id*. at 159-200. Stevens filed a reply to the State's response on August 17, 2006. *Id*. at 253-64.

By order rendered November 14, 2006, the state post-conviction trial court granted an evidentiary hearing on the Rule 3.850 motion and appointed counsel for Stevens. *Id*. at 265-66. Evidentiary and final disposition hearings took place in March 2007. *Id*. Exs. N and O. At the beginning of the evidentiary hearing, Stevens' counsel stated that Ground 5, "the alibi issue," constituted the only ground on which Stevens would proceed, the matter was discussed, and Stevens specifically agreed to and confirmed this on the record. *Id*. Ex. N at 2-6; *see id.* Ex. O at 2.

On April 2, 2007, the state post-conviction trial court rendered an order denying relief. *Id*. Ex. M at 271-72. The order incorporated the oral findings and rulings made at the disposition hearing. *Id*.; *see id.* Ex. O at 2-22.

Stevens, through counsel, appealed the denial of his Rule 3.850 motion to the First DCA, assigned case number 1D07-1984. *See id.* Ex. M. Counsel filed an Initial Brief raising one point: The trial court erred in denying Stevens' motion for post-conviction relief as to the alibi defense. Doc. 10 Ex. P. The State filed an Answer Brief. *Id*. Ex. Q. No reply brief was filed. *See* online docket for 1D07-1984 at www.1dca.org. The First DCA affirmed without an opinion on November 20, 2008. Doc. 10 Ex. R; *see* Stevens v. State, 1 So. 3d 184 (Fla. 1st DCA 2008). The First DCA denied Stevens'

motion for rehearing.  Doc. 10 Ex. S.  The mandate issued on February 20, 2009.  *Id*.

Ex. T.

On June 1, 2009, Stevens filed a pro se motion to correct illegal sentence

pursuant to Florida Rule of Criminal Procedure 3.800(a).  *Id*. Ex. U at 1-12.  The state

trial court denied this motion by order rendered August 18, 2010.  *Id*. at 15-17.  Stevens

appealed to the First DCA, assigned case number 1D10-4962.  *See id.* Ex. U.  No

briefs were filed.  *See* online docket for 1D10-4962 at www.1dca.org.  The First DCA

affirmed without an opinion on November 8, 2010.  Doc. 10 Ex. V; *see* Stevens v. State,

48 So. 3d 842 (Fla. 1st DCA 2010).  The mandate issued on December 6, 2010.  Doc.

10 Ex. W.

As indicated above, in February 2011, Stevens filed a § 2254 petition in this

Court, with attached exhibits and a memorandum.  Doc. 1.  After direction by this Court,

Doc. 5, Petitioner filed an amended petition with attached exhibits, Doc. 6, on May 20,

2011.  On October 17, 2011, Respondent filed an answer, with exhibits.  Doc. 10.

Petitioner has not filed a reply, although given the opportunity to do so.  *See* Doc. 9.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>,

633 F.3d 1272 (11th Cir. 2011).

In this case, in his amended § 2254 petition, Stevens raises eight grounds:

(1) trial counsel rendered ineffective assistance by failing to investigate and call exculpatory witnesses, Doc. 6 at 4;

(2) appellate counsel rendered ineffective assistance by failing to argue a double jeopardy claim, *id*.;

(3) Stevens' sentence exceeds the statutory maximum "wherefore causing a incorrect calculation in the sentencing score sheet (on Count One: Armed Robbery)," *id*. at 5;

(4) Stevens' sentence exceeds the statutory maximum "wherefore causing a incorrect calculation in the sentencing score sheet (on Count One: Armed Robbery w/a Deadly Weapon)," *id*.;

(5) Stevens "was charged with a burglary of a structure, held that sentence exceeds stat. max because he should have been charged with a trespassing or a attempted burglary in the instant case, wherefore causing a incorrect calculation in the sentencing score sheet," *id*. at 6;

(6) trial counsel failed to file a motion for judgment of acquittal on identity, *id*. at 6-7;

(7) trial counsel rendered ineffective assistance by failing to request jury instructions on an "independent act," *id*. at 7-8; and

(8) trial counsel rendered ineffective assistance by failing to object to the prosecutor's closing argument, *id*. at 8-9.

Each ground is addressed below, with the IAC claims in Grounds 1, 2, 6, 7, and 8

addressed first, and then the remaining claims, Grounds 3, 4, and 5.  Because Stevens

has not shown entitlement to federal habeas relief, the amended section 2254 petition

should be denied.

In Grounds 1, 2, 6, 7, and 8, Stevens raises IAC claims.  In <u>Strickland</u>, the U.S.

Supreme Court adopted a two-part test for such claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that

counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.

To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Id.*

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

<u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1388.

For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Id.

### Ground 1: IAC – Failing to Investigate and Call Exculpatory Witnesses

In his first ground, Petitioner Stevens asserts that trial counsel rendered ineffective assistance by failing to investigate and call exculpatory witnesses. Doc. 6 at 4 and Ex. B. Stevens asserts that, prior to the trial, he informed defense counsel that Barbara Stevens (Petitioner's mother), Jamar Bell, Sr. (Petitioner's cousin), and Latoya Stevens (Petitioner's sister), knew the time frame of his whereabouts on the night of his

arrest.  *Id*. at 4.  Stevens asserts he asked defense counsel to interview these three witnesses and defense counsel assured Stevens that he would do so.  *Id*. at 4 and Ex. B.  Stevens asserts he later learned that "neither witness was interviewed," and "neither witness testified at trial."  *Id*. Ex. B.  Stevens asserts these witnesses would have testified that he left his mother's house around 11:30 p.m. on October 13, 2003, the day the crime occurred.  *Id*.

Respondent explains this is the only ground on which Stevens proceeded in his Rule 3.850 hearing in the state post-conviction trial court, and he raised this ground as the fifth claim in that proceeding.  *Id*. Doc. 10 at 4-5; *see* Doc. 10 Ex. L at 93, 111-16. Respondent further explains that, in the Rule 3.850 motion, Stevens alleged that Bell and Latoya would have testified to being with him before his arrest and his mother would have known the times he arrived and left her house.  Doc. 10 Ex. L at 115-16. Respondent details the testimony presented at the evidentiary hearing.  Doc. 10 at 5-10.  Respondent explains that, in denying the claim at the disposition hearing, the state post-conviction trial court cited <u>Strickland</u>, and made findings, including credibility findings, on the record.  *Id*. at 10-11.  In particular, the trial court concluded defense counsel's testimony was more credible than Stevens.  *Id*. at 11.  Respondent asserts this finding is supported by the record and Stevens does not offer evidence to the contrary.  *Id*.  Respondent argues, therefore, this court must defer to the state post-conviction trial court's acceptance of defense counsel's testimony over that of Stevens. *Id*.  Respondent further explains the state post-conviction trial court found that defense counsel adequately investigated the alibi and concluded counsel's decision not to

pursue an alibi defense was sound strategy, and reasonable strategic decisions cannot support habeas relief. *Id*. at 11-13. Respondent explains the court noted the inconsistencies between Stevens' account and the victim's testimony at trial supported defense counsel's determination that the alibi was unreliable and, therefore, counsel's decision not to pursue the alibi did not constitute deficient performance. *Id*. at 13. Respondent explains the court further concluded there was no prejudice due to the overwhelming proof of guilt. *Id*. Respondent concludes the post-conviction trial court reasonably determined the facts based largely on the testimony presented at the evidentiary hearing, and correctly applied Strickland to deny relief. *Id*. at 13-14.

As Respondent explains, Stevens raised, as his fifth claim in his Rule 3.850 motion, the ground that defense counsel rendered ineffective assistance by failing to investigate and call his mother, his sister, and his cousin to support his alibi. The state post-conviction trial court held an evidentiary hearing on this ground, during which Stevens was represented by appointed counsel and Stevens, his mother, and defense trial counsel, Owen Chin, testified. *See* Doc. 10 Ex. N. The court also took notice of the sworn statements of Stevens' sister and cousin. *Id*. at 87. Thereafter, the state court held a disposition hearing and made the following extensive findings, after acknowledging the applicable Strickland standard for an IAC claim. *Id*. Ex. O at 2-21. The judge found defense counsel's testimony more credible than that of Petitioner and that Petitioner had not shown deficient performance:

The issue in this case appears to be Mr. Owen Chin's failure to sufficiently talk and interact with Mr. Stevens and to investigate Mr. Stevens' alibi testimony and call alibi witnesses. . . . I'm going to go through and tell you why I reached this conclusion, but I've concluded that Mr. Chin's testimony is the more credible, and to the extent it differs from the testimony of other witnesses, I accept his as the controlling testimony. And I accept all of Mr. Chin's testimony as controlling and credible, but there needs to be more discussion than just that.

For example, Mr. Stevens testified in essence that – the record would bear this out, but in essence that he never saw Mr. Chin, and I – at least by inference, that he never talked to Mr. Chin until about a day or two before February. And perhaps he may have talked to him he said once early on to give him the names of alibi witnesses. But he gave the very clear testimony that he hardly ever saw Mr. Chin or talked to Mr. Chin about the case.

Indeed, Mr. Chin's testimony is contrary to that, and I hereby find as a fact that Mr. Chin discussed the case with Mr. Stevens and his mother multiple times, both by telephone, by video, and in person. Now, this is also confirmed by Ms. Stevens' testimony, and Mr. Chin's actual documented notes in his file. And therefore I find that Mr. Chin's degree of discussion with Mr. Stevens, and his client – and his mother was reasonable and not ineffective. Therefore, as to that issue, the first prong of Strickland has not been met.

Just in general I've read the entire court file and the transcript is contained in the file, and I'll make the comment that Mr. Chin's job performance was not only not ineffective, it was actually quite good.

*Id*. at 6-7. The judge found defense counsel adequately investigated the alibi and made

a reasonable strategic decision not to use the alibi:

Mr. Chin did in fact adequately investigate the alibi. He talked to Mr. Stevens about this. he talked to Ms. Stevens, the mother, who was the key focal alibi witnesses. She was the one who had the key information about the times. It's unclear from the testimony as to whether or not he talked to the other two witnesses.

I got the impression from Mr. Stevens' testimony that Mr. Chin had talked to them and had told him that after talking to them, it was not necessary or appropriate for him to call them. Mr. Chin frankly could not recall. However, I believe based upon the overall balance of the

testimony, it appears to be likely Mr. Chin did talk to them at some point, although Mr. Chin frankly does not recall.

I'm going to do an analysis of those affidavits that are in the court file and also attach an additional exhibit to the record that's in the court file to support my analysis. Mr. Chin did adequately investigate the alibi. He talked in detail with the mother. We know that for a fact. The mother agrees with that. His decision not to use the alibi I find as a matter of fact and as a matter of law was a reasonable decision and sound trial strategy.

Mr. Chin, among other things, prepared a map of the house and the Rickards school location, and – the same question that popped into my mind before actually Mr. Chin was called, obviously occurred to him, and that is that the house, Rickards, and the park where Mr. Stevens was apprehended with the victim's wallet in his possession, were within a very close distance. And the record clearly demonstrates, as I went through it again last night, that these locations were in very close proximity by foot, but Mr. Stevens had access to a car that Mr. Williams [his co-defendant] was driving.

And all the witnesses – well, the witness statements of Mr. Bell, Mr. Stevens' sister, and Mr. Stevens' trial testimony all clearly state that they were out driving in Mr. Williams' car that night. So there's clear reason to suppose that Mr. Stevens could have gotten from his mother's house over to Rickards in a matter of a minute or two, and that's based on Ms. Stevens' own testimony.

I accept Mr. Chin's statement that in his conversation with Mr. Stevens' mother that she was ambiguous about the times. And I accept his statement that he did not hear from her the same detail that she testified to at the hearing yesterday. I would also note and find that Mr. Chin, in addition to himself and to preparing a map of the scene, went to the scene himself and measured the times and the distances. The times of the alibi frankly have still yet to be clearly established, even to me. And that's one of the reasons why I find that Mr. Chin's trial strategy not to use it was a sound strategy.

*Id*. at 7-9. The judge analyzed the evidence concerning the timing of the crime and the

alibi:

First of all, I would like to point out that in the trial testimony, the – there's some question as to when this occurred. In the court file there's a police report indicating that the crime occurred at 11:30. And the

testimony, at Trial Page 42, Volume 1, the testimony of Ronnie Chaves, who is the victim, stated that he was working at approximately 11:30, he said, yes. And he said at that time, he heard knocking in the locker room area, then he went on to describe being attacked and robbed.

So the trial transcript supports at least an inference a jury could make that the crime did not start until at least 11:30. Also in the evidence is the testimony of Officer Shane Porter who was driving along the street near there. He saw two men running from Rickards, crossing the street the other way. He described the two men crossing the road. He said it was in his words, quote, like 11:30 at night. There were two men crossing the roads.

And he identified them as one having a white shirt, one having a black shirt. When Mr. – which I think is consistent with the identification Mr. Chaves gave, and is consistent with when Mr. Stevens was arrested, he was wearing a black T-shirt. And he also then said he did not realize there had been a crime occur [sic] when the two men ran across the road. They ran across the road, and then, as I recall the testimony, Mr. Chaves came out and came up to his car and just said he had been, quote, jumped and robbed, and he gave a description.

And he asked him real quick what they had and what they were wearing, and he described them, and he described the same – essentially the same description as what he had observed. It's interesting in the trial testimony, this goes to the prejudice prong, which I'll discuss later, but Officer Porter said that one of the two men that he saw running by his car from Rickards to the park seconds before Mr. Chaves came out and said he had been robbed, was Mr. Stevens.

He positively identified him as Mr. Stevens, as well as did, I believe, Mr. Chaves in his testimony. As well as Mr. Stevens was found a few minutes thereafter with Mr. Williams, in his possession the victim's wallet and money as described to Officer Porter. And one or both of them had also keys to the school with Leon County Schools imprinted on them.

. . . .

. . . So those are facts. It's established in the testimony and in the court file, that this occurrence happened at least at 11:30 or thereafter. Now, Mr. Chin made the comment that, in talking to Mr. Stevens' mother she really wasn't specific on times, and she made some statement about 10:00. And when you hear my recitation of the statements and letters of the court file, I think you'll see that Mr. Chin's memory is actually quite

good compared – based on a letter from Mr. Stevens' brother that was sent to Judge Hankinson shortly after the trial that I saw in the court file and read last night.

Mr. Chin said, at most even if you listen to mom's testimony yesterday and accepted it, you're parsing a matter of minutes.  And it was his strategy, with which I agree, that when you are parsing a few minutes like that with all the other overwhelming evidence, that an alimony [sic] witness was not an appropriate trial strategy.

We need to recall that one of the best things most criminal defendant[s] have going for them is the credibility that the defense counsel can establish with the jury.  And when this defense counsel calls alibi witnesses that are either not credible or all contradict each other that not only lowers those witnesses' credibility, it lowers counsel's credibility with the jury.  And that's often the only thing that stands between the defendant and a really bad jury result, is credibility of counsel.

*Id*. at 7-12.  The judge also analyzed the alibi witnesses, starting with Barbara Stevens,

Petitioner's mother:

Ms. Stevens' testimony, I find based upon Mr. Chin's testimony is inconsistent with what she told Mr. Chin at the time.
Now, yesterday in court Ms. Stevens – and I'm not saying that Ms. Stevens is being untruthful or trying to intentionally falsify, or doing anything bad.  I'm just stating that under the best of circumstances, there are conflicting statements.  Ms. Stevens testified in court that approximately that – well, she didn't say approximately.  She used exact minutes.

At 11:15, she asked Chris, Mr. Stevens, to quiet down, that at 11:30 she looked out – she either looked out of her window, or Chris came in the door of the house, and that at 11:32, she looked out in the yard, and no one was there.  That's what she said yesterday.  And she also said that she heard at one of these times her daughter slam the door at some other place in the house.

However, in Ms. Stevens' statement of January 6th, 2006, which was attached to the 3.850 motions, and it's a record and attached to the motion, in her affidavit there, she stated that she was, "waked up at 11:27."  And that's an inherent conflict in what she testified to here.  She said in that statement she was, "waked up at 11:27," yet at the hearing, she said she talked to Chris at 11:15.  In her 1/6/06 statement she said

she was "waked up" by Chris and the others, and she looked at her clock, and it was 11:27, and then she fell back to sleep.

She said she was "waked up" again. She apparently fell back to sleep within a minute or two according to this statement, and she was "waked up" again, and told the people to be quiet. And then she went to bed and looked at the clock again, apparently, and it was 11:35. And I know we're talking about minutes here, and this is parsing, but that is inconsistent with the statement that she said she looked out and saw no one in the yard at 11:32.

Those statements have some similarity, but there are definite inconsistencies. And when you give such precise times without any hesitation or range, you open yourself up to severe cross examination.

*Id*. at 12-14. The judge analyzed the written statements and other documentation

provided by Petitioner's sister, Latoya Stevens:

Now, then we go on to Latoya Stevens' statement from 1/11/06, and I must tell you it strikes me as a little odd that Ms. Stevens was not here to testify yesterday, but I will take her statement – will accept her statement into evidence.

In Ms. Stevens' statement of January 11th, '06, she said that she and Mr. Stevens and another one or two people were hanging out in the front yard. They decided to ride around some, leaving the mother's house after 10:00. They rode around to Jamar Bell's home, got him there at a little after 11:00, and then she apparently – and Mr. Williams and Mr. Stevens got back to mother's house at 11:30, which is inconsistent with what I heard that mom had talked to them at 11:15 and told them to quiet down, and that she went in the house, and the boys went out, left to drink beer. That's that statement.

Also in the court file, and I'm going to make it a copy and give it to the Clerk as an exhibit, Court's Exhibit A, is a letter. It's addressed to the Court from Latoya Stevens and filed on May 4th, 2004, and in that letter she said that she, and Mr. Stevens, and the others were watching a movie at the house. First time I've heard about a movie being watched. And at about almost 9:00 they stopped watching the movie, and then they went and took Jamar to his house. This is at least an hour earlier they say they took Jamar home than she say in her January 11th, statement.

They rode around some before taking Jamar home. They got him home, and they got back to the mother's house, and they smoked outside for five or ten minutes. First time I've heard about smoking outside in any of the statements. Then they all went back into the house and started watching the movie again and finished the movie. And then she then went to her bedroom, leaving the Defendant and Mr. Williams in the den, and then she stated – this is quotes from this letter she wrote Judge Hankinson. At this time, quote, it was a little after 10:00 when I walked back into the den.

So all this happened, and it was still a little after 10:00. None of this I've heard from any other statement, and this is inconsistent with what she said in her statement attached to the motion.

And then she stated that she – that Mr. Stevens at a little after 10:00 told her that he and Mr. Williams were going outside to drink. This is an hour – an hour and a half before the sister said Mr. Stevens told her he was going outside to drink in the January '06, statement. She said they then left, and she went into her mother's bedroom to watch TV with her. And that they, apparently referring to she and her mother, could hear them, referring to Stevens and Williams, talking outside. And about five minutes later they were gone.

So best of all worlds Mr. Williams and Mr. Stevens were gone according to this statement, which I will make Court's Exhibit A, were gone an hour before this crime occurred. And so there's a great big hole in the alibi that I'm hearing today from Ms. Stevens, the sister's statement. And her statement is in large portions inconsistent with what mom testified to before me yesterday, what mom said in her affidavit, and what sister said in her affidavit, and also inconsistent with what Mr. Jamar Bell said in his affidavit.

*Id*. at 14-17. The judge then analyzed the affidavit provided by Petitioner's cousin,

Jamar Bell, and found it consistent with defense counsel's testimony:

Mr. Bell said they were – instead of watching a movie in the house, they were hanging out in the front yard. It was around 10:00 when we decided to leave and ride around. We drove around for a little. He told Mr. Stevens it was time to get to his house. They pulled up to his apartment, and it was about 11:10, and then they left. So that's consistent with all the other statements I've heard.

*Id*. at 17.  The judge determined the alibi witnesses' accounts were not consistent with each other, in accordance with defense counsel's testimony that that evidence was not specific and reliable, counsel's decision not to use the alibi was a reasonable strategy, and, even if counsel was deficient for not introducing such evidence, the alibi was not credible and Petitioner did not suffer prejudice:

> So this supports Mr. Chin's testimony that the alibi in this case was not specific and not reliable.  The – even if I found, which I don't, that Mr. Chin was ineffective under Ground 1, and that he should have introduced this alibi.  If this alibi comes into evidence as I see it now, and as he would have reasonably seen it then, it's all over the place.

> And I find specifically that it would not have resulted in an acquittal or a lesser included offense.  If anything, it would have resulted in a conviction a lot quicker than what happened before.  The alibi simply is not credible.  That was the basis for Mr. Chin's not using it.  It was a sound strategic trial decision, and further, even if you got past Ground 1, there is no prejudice.

*Id*.  The judge explained why Petitioner suffered no prejudice:

> The prejudice prong was not made because of the overwhelming proof that Mr. Stevens was guilty.  The victim says this happened at 11:30.  The TPD Officer identified Mr. Stevens as the person running across the road at 11:30 being followed by the beaten up victim.

> The victim had the – the defendant had the victim's wallet on him. The victim's – the defendant's testimony itself in large part is inconsistent with the alibi.  His testimony at trial is not consistent with the points of the alibi here, and as well as Judge Hankinson, who actually heard the trial, the only one of us besides Mr. Stevens who actually heard everything in this room, commented in the sentencing on April 29th, 2004.

> He says, on Page 22, Line 25, Mr. Stevens, we went to trial in this matter.  It was absolutely a clear-cut case.  There was no doubt about the facts of the case.  You were found guilty by a jury on all but one of the charges.  I would have found you guilty on all of them.  For some reason they decided not to convict you of the battery on the law enforcement officer.

So the judge who heard all the witnesses and saw them felt the evidence was overwhelming. The review of the trial transcript confirms that feeling in my mind, so therefore the prejudice prong was not met because bringing on these alibi witnesses as lack of – with the lack of specifics and the inherent contradictions, and even if you accept that they were all uniform alibi statements, it's awful hard to overcome the fact that Mr. Stevens was identified as being the person running across the road at a time when everybody was saying he was at mom's house, and that he was found in the park a few minutes later with the victim's wallet on him.

That's very hard to reconcile with an alibi which apparently was supposed to convince a jury that he was at mom's house while this was happening. So. Therefore the alibi simply cannot stand. It's just more damage than good.

*Id*. at 17-19. The judge also addressed the claim concerning defense counsel's failure

to take depositions:

Also, there was a question about were depositions taken in the case. I asked Mr. Chin to give his rationale why depositions were taken – were not taken, and he gave that. I accept that as a legitimate trial strategy rationale. And it's not unique to Mr. Chin. There are many, many of the finest criminal defense lawyers who take few or no depositions for the specific reason that, as I have observed many times in trial, and this is no knock on law enforcement officers. They have many hundreds of numbers of cases to try to recall, and reports. And State attorneys have sometimes close to 200 cases some of them to handle.

And it's not unusual to have an officer come up, testify at a trial, and have some mistake or error, or he's forgotten something about the testimony. And if the person had been deposed, this error would have been picked up and corrected at trial. Whereas it's much more difficult to correct those sorts [of] errors at trial. So it's a legitimate trial strategy to do that.

Also, Mr. Chin testified that Mr. Stevens wanted to get this case to trial very quickly, and didn't want to broke any delays, and that that would also be another reason why it would be difficult to take a lot of depositions in the brief amount of time that Mr. Stevens gave Mr. Chin to go to trial.

*Id*. at 19-20. The judge summarized his ruling:

In summary, I find that there is no ineffective conduct by Mr. Chin. Prong one is not met, and prong two is not met, even if one were to get by prong one, because nothing that I've heard that he – has been suggested he might have done would have changed the result of the trial. In fact, it's quite likely that it would have worsened the results of the trial.

*Id*. at 20. The judge also acknowledged Mr. Chin's experience and reputation:

Let me also state that Mr. Chin has established without any dispute that he's a broadly experienced criminal defense lawyer, having practiced at the time of this trial for approximately 23 years, close to 23 years, exclusively in this area. He's uniformly recognized in this jurisdiction as being one of the best, most experienced criminal defense lawyers around, in the same class as Mr. Cummings, who's counsel for the defendant in the case.

There's – you could probably count the group of lawyers in that class in this community of less than ten that have the same degree of experience and reputation.

Mr. Stevens has been extremely luck to be represented by both Owen Chin, in the first case, and by Mr. Cummings in this proceeding. The quality of representation was excellent. It was not ineffective. It did not cause Mr. Stevens to get convicted.

*Id*. at 20-21. The state post-conviction trial court adopted these findings in the written

order denying Stevens' Rule 3.850 motion. Doc. 10 Ex. M at 271-72. Stevens

appealed that order, and the First DCA affirmed the case without an opinion. *See id.*

Ex. R; <u>Stevens v. State</u>, 1 So. 3d 184 (Fla. 1st DCA 2008). This constitutes a ruling on

the merits and is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); <u>Harrington v.</u>

<u>Richter</u>, 131 S.Ct. 770, 784-85 (2011).

As Respondent asserts, the record supports the state post-conviction trial court's

determination of the facts, as set forth in the oral rulings quoted above, and adopted in

the written order. *See* Doc. 10 Exs. M at 271-72 (order), N (transcript of Rule 3.850

evidentiary hearing); *see also* Doc. 10 Exs. B and C (trial transcripts). Stevens has not

shown the state courts' rulings resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, or that it was based on an

unreasonable determination of the facts in light of the evidence presented. *See* 28

U.S.C. § 2254(d)(1)-(2). Stevens is not entitled to federal habeas relief, and this ground

should be denied.

### Ground 2: IAC – Appellate Counsel's Failure to Argue Double Jeopardy

In his second ground, Petitioner Stevens argues his appellate counsel rendered

ineffective assistance by failing to argue a double jeopardy claim. Doc. 6 at 4 and

Ex. B. Stevens asserts appellate counsel should have argued that, under the

fundamental error doctrine, he could not have been convicted and sentenced for both

burglary of a structure with an assault and armed robbery with an assault. *Id*. Ex. B.

Stevens asserts the State's evidence clearly established the assault was a product of,

and was consumed within, the armed robbery offense. *Id*. Stevens argues he was

improperly prosecuted for the assault in the commission of both crimes. *Id*.

Respondent agrees that both crimes – armed robbery with a deadly weapon

(Count 1) and burglary with person assaulted (Count 2) – were committed in a single

episode but points out they were not committed in a single act. Doc. 10 at 14.

Respondent explains that Stevens had already entered the high school with the intent

to commit a felony, before encountering and robbing the custodian. *Id*. The two crimes

do not require identical elements of proof. *Id*. at 15. Count 1, armed robbery with a

deadly weapon, in violation of section 812.13(2)(a), Florida Statutes (2003), requires a

"robbery" (taking money or property through use of force or fear) while carrying a deadly

weapon, but does not require entry of a structure. *Id*. Count 2, burglary with person

assaulted, in violation of section 810.02(2)(a), requires entry of a structure with the

intent to commit a felony and a person assaulted, but it does not require a taking of

money or property, or the use of a weapon, thus each offense has at least one element

the other does not and federal double jeopardy is not implicated. *Id*. at 15-16.

Respondent asserts that, facially, neither statute establishes a degree crime of the

same offense; armed robbery does not subsume burglary with assault and vice versa.

*Id*. at 16. Respondent concludes the double jeopardy claim was meritless under Florida

law at the time of the direct appeal; therefore, appellate counsel was not ineffective for

not raising it. *Id*.

As Respondent indicates, Stevens raised a double jeopardy claim in his state

habeas petition alleging ineffective assistance of appellate counsel that he filed in the

First DCA. *See* Doc. 10 Ex. H; Doc. 10 at 14. In that petition, Stevens argued assault

was an essential element of two of the crimes for which he was convicted – armed

robbery with a deadly weapon (Count 1) and burglary with person assaulted (Count 2) –

and, therefore, convictions for both violated double jeopardy. The First DCA denied the

petition on the merits. Doc. 10 Ex. J; <u>Stevens v. State</u>, 929 So. 2d 1087 (Fla. 1st DCA

2006). This constitutes a ruling entitled to AEDPA deference.

Stevens has not shown the state court's ruling resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law,

or that it was based on an unreasonable determination of the facts in light of the

evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2). The United States Supreme

Court has explained that the Double Jeopardy Clause provides three separate

constitutional protections:

> It protects against a second prosecution for the same offense after
> acquittal.  It protects against a second prosecution for the same offense
> after conviction.  And it protects against multiple punishments for the
> same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds*,

Alabama v. Smith, 490 U.S. 794 (1989) (concerning presumption of vindictiveness in

sentencing).

In this ground, Stevens asserts he received multiple punishments for the same

offense.  In such a circumstance, the Eleventh Circuit has summarized its interpretation

of U.S. Supreme Court precedent:

> [O]ur review of a potential double jeopardy violation arising from a single
> prosecution is a two-stage analysis.  First, we ascertain whether there
> exists a clear legislative intent to impose cumulative punishments, under
> separate statutory provisions, for the same conduct.  If a clear indication
> of such intent exists, our inquiry is at an end and the double jeopardy bar
> does not apply.  If there is no indication of legislative intent to impose
> cumulative punishments, we examine the relevant statutes under the
> same-elements test of Blockburger[ v. United States, 284 U.S. 299
> (1932)].  Under that test, if each statutory offense requires proof of an
> element not contained in the other, the offenses are not the "same" and
> double jeopardy is no bar to cumulative punishment.

Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996).

Here, as Respondent points out, each offense required an element the other did

not.  Armed robbery with a deadly weapon, Count 1, constituted a violation of section

812.13(2)(a), Florida Statutes (2003), which provided:

> If in the course of committing the robbery the offender carried a firearm or
> other deadly weapon, then the robbery is a felony of the first degree,


punishable by imprisonment for a term of years not exceeding life
imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.

Also relevant, section 813.13(1), Florida Statutes (2003), provided:

> "Robbery" means the taking of money or other property which may be the
> subject of larceny from the person or custody of another, with intent to
> either permanently or temporarily deprive the person or the owner of the
> money or other property, when in the course of the taking there is the use
> of force, violence, assault, or putting in fear.

Thus, the offense of armed robbery with a deadly weapon required a "robbery" while
carrying a deadly weapon, but did not require entry of a structure. Burglary with a
person assaulted, Count 2, constituted a violation of section 810.02(2)(a), Florida
Statutes:

> Burglary is a felony of the first degree, punishable by imprisonment for a
> term of years not exceeding life imprisonment or as provided in s.
> 775.082, s. 775.083, or s. 775.084, if, in the course of committing the
> offense, the offender . . . [m]akes an assault or battery upon any person[.]

Also relevant, section 810.02(1)(b)1., Florida Statutes (2003), provided:

> For offenses committed after July 1, 2001, "burglary" means . . . [e]ntering
> a dwelling, a structure, or a conveyance with the intent to commit an
> offense therein, unless the premises are at the time open to the public or
> the defendant is licensed or invited to enter[.]

Thus, this offense required entry of a structure with the intent to commit a felony and a
person assaulted, but it did not require a taking of money or property, or the use of a
weapon, as required by armed robbery with a deadly weapon. Accordingly, Stevens'
two convictions, in Count 1 and Count 2, resulted from separate offenses. Neither
offense is a degree of the same core offense or a lesser offense whose statutory
elements are subsumed by the greater offense. Double jeopardy is not implicated.
*See, e.g.*, Gadson v. Singletary, 883 F. Supp. 702 (S.D. Fla. 1995); Williams v. Tucker,

No. 3:10cv238–LAC/EMT, 2012 WL 2675468, at *23-27 (N.D. Fla. Apr. 30, 2012).

Therefore, Stevens' appellate counsel was not deficient for failing to raise this argument

and Stevens suffered no prejudice by such failure. Stevens has not shown the state

court's rejection of this claim was contrary to or an unreasonable application of clearly

established federal law. This ground should be denied.

### Ground 6: IAC – Failure to File Motion for Judgment of Acquittal

In his sixth ground, Stevens argues trial counsel failed to file a motion for

judgment of acquittal based on identity, although Stevens does not specifically assert

this constitutes IAC. Doc. 6 at 6. Stevens indicates that he did not raise this claim on

direct appeal, in a Rule 3.850 motion, or otherwise because he "did not learn about this

claim until his trial counsel mention[ed] it while on [the] stand, during the . . . evidentiary

hearing." *Id*. at 7.

As Respondent points out, and as indicated above, post-conviction counsel, with

Stevens' express agreement on the record, withdrew all grounds for relief in the state

post-conviction proceeding except for the ground concerning alibi witnesses. Doc. 10

at 22. Because Stevens did not exhaust this ground in state court, federal habeas

review is precluded. *See, e.g.*, Pope v. Sec'y Dep't of Corr., 680 F.3d 1271, 1284

("Federal habeas review of a petitioner's claim is typically precluded when the petitioner

procedurally defaulted on or failed to exhaust the claim in state court. . . . A failure to

exhaust occurs . . . when a petitioner has not 'fairly present[ed]' every issue raise din

his federal petition to the state's highest court, either on direct appeal or on collateral

review.").

**Ground 7**: **IAC – Failure to Request Jury Instructions on "Independent Act"**

In his seventh ground, Stevens argues trial counsel rendered ineffective

assistance by failing to request jury instructions on "independent act" where the record

is clear that the State presented no evidence that Stevens participated in the actual

robbery or even knew that it would occur.  Doc. 6 at 7.  Stevens argues it was an

independent act of his co-defendant.  *Id*.  Stevens indicates he raised this claim in his

Rule 3.850 motion, "but was advised by appointed counsel before the evidentiary

hearing not to go forth with this claim" and "as Petitioner being illiterate to law and

believing counsel had his best wishes at hand, he agreed with counsel to not go forth

with this said claim."  *Id*. at 8.

As Respondent points out, as indicated above, and as acknowledged by

Stevens, post-conviction counsel, with Stevens' express agreement on the record,

proceeded only on the claim concerning the alibi witnesses.  Doc. 10 at 22-23.

Because Stevens did not exhaust this ground in state court, federal habeas review is

precluded.  *See, e.g.*, <u>Pope</u>, 680 F.3d at 1284.

**Ground 8**: **IAC – Failure to Object to Prosecutor's Closing Argument**

In his eighth ground, Stevens argues trial counsel rendered ineffective

assistance by failing to object to the prosecutor's closing argument during his trial.  Doc.

6 at 8-9.  Stevens asserts the prosecutor contorted his testimony and that of Officer

Porter.  *Id*. at 8.  As with Ground 7, Stevens indicates he raised this claim in his Rule

3.850 motion, "but was advised by appointed counsel before [the] evidentiary hearing

not to go forth with this claim" and "as Petitioner being illiterate to law and believing

counsel had his best wishes at hand, he agreed with counsel to not go forth with this said claim." *Id*. at 9.

Again, however, as Respondent points out, as indicated above, and as acknowledged by Stevens, post-conviction counsel, with Stevens' express agreement on the record, proceeded only on the claim concerning the alibi witnesses. Doc. 10 at 22-23. Because Stevens did not exhaust this ground in state court, federal habeas review is precluded. *See, e.g.*, Pope, 680 F.3d at 1284.

### Ground 3: Sentence Exceeds Statutory Maximum – Armed Robbery

In his third ground, Stevens argues his sentence on Count 1 exceeds the statutory maximum "wherefore causing an incorrect calculation in the sentencing score sheet." Doc. 6 at 5. Stevens asserts "[t]he record is clear . . . that when the Petitioner and co-defendant were caught attempting to break into the locker room by victim [Mr. Chavis], the acted as if they were going to leave the school premises until the co-defendant turned around and asked the victim did he know him" and "[t]he co-defendant thought the victim recognized him and would report" them. *Id*. Stevens asserts the co-defendant then attacked the victim, and "when the co-defendant and the Petitioner began to assault the victim, the co-defendant had a weapon (a hacksaw) in hand, which was used to cut the locker room door hinges." *Id*. Ex. B at 1. Stevens further asserts that "when the thought did occur[] to the co-defendant to rob the victim, the weapon was abandoned in the actual assault phase, where it was shattered against the wall from when the victim ducked [after] the first swing of the weapon during the

actual assault phase" and "[t]he record is clear that the weapon was never used or a part of the actual robbery phase." *Id*. at 1-2.

Respondent asserts that, in this ground, Stevens admits that when he and his co-defendant began assaulting the victim, the co-defendant had a hacksaw. Doc. 10 at 17. Stevens' admission that the hacksaw shattered upon the co-defendant's first swing at the victim constitutes an admission that the hacksaw was used during the robbery. *Id*. at 17-18. Respondent points out that having admitted to robbery with a deadly weapon, at most Stevens contends that he did not actually wield the hacksaw; however, even if true, this is immaterial because Stevens would still be a principle under section 777.011, Florida Statutes (2003). *Id*. at 18. Respondent further explains that under section 812.13(2)(a), Florida Statutes (2003), robbery with a deadly weapon is a first degree felony punishable by up to life in prison and, here, Stevens received a sentence of thirty (30) years in prison on this count; thus, Stevens' claim that his sentence exceeds the statutory maximum lacks merit. *Id*. To the extent Stevens claims an error in the sentencing scoresheet calculation, Respondent asserts he is still not entitled to relief because he was sentenced within the statutory maximum and, beyond that, any error in scoresheet calculation is not a cognizable ground for federal habeas relief. *Id*.

Respondent's points are well-taken. Assuming Stevens has exhausted this ground, he has not shown the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2). As Respondent indicates,

Stevens' offense was punishable by up to life in prison and he received a prison

sentence of thirty (30) years.  This ground should be denied.

## Ground 4: Sentence Exceeds Statutory Maximum<br>– Armed Robbery with Deadly Weapon

In his fourth ground, Stevens again claims his sentence on Count 1 exceeds the

statutory maximum "wherefore causing an incorrect calculation in the sentencing score

sheet."  Doc. 6 at 5.  As in Ground 3, Stevens asserts "[t]he record is clear in the instant

case that when [Petitioner and co-defendant] saw victim approaching them they acted

as if they were going to leave the premises, then they turned around, the co–defendant

thought the victim recognized him, then both defendants began to assault victim."  *Id*.

Stevens asserts there is no testimony to indicate that he and the co-defendant

discussed what they were going to do once they had been caught trying to break into

the locker room.  *Id*.; Doc. 6 Ex. B at 2.  Stevens asserts "there was no meeting of the

minds or common design to commit another crime" and Stevens "simply heard his co-

defendant's remark and followed his lead."  Doc. 6 Ex. B at 2.  Stevens asserts they

"could not have known that the victim would walk in catching them attempting to commit

a burglary" and he "was unaware that his co-defendant intended to rob the victim."  *Id*.

Stevens asserts "the record is clear that [he] did not participate in the actual robbery or

even knew that it would occur" and further asserts "it was an independent act of the co-

defendant."  *Id*.  Stevens asserts that "judging from the record evidence, the co-

defendant may not have known himself that he was going to commit the robbery until

the thought occurred to him after the actual assault on the victim." *Id*. Stevens argues

no evidence shows he "was involved in co-defendant's taking of victim's property." *Id*.

Respondent indicates Stevens has repeated Ground 3 under Ground 4. Doc. 10

at 19. Respondent states that if Stevens is challenging the length of his sentence for

Count 1 and the calculation of his scoresheet, then Respondent relies on the answer to

Ground 3. *Id*. Respondent asserts that, factually, Stevens' claim here appears to

contest the sufficiency of the evidence that Stevens intended to commit a robbery. *Id*.

The victim identified Stevens as one of the assailants and testified that Stevens actively

continued beating him while the co-defendant took his wallet and school keys. *Id.*

Thus, Respondent asserts that, at the least, Stevens acquiesced in, and facilitated, the

robbery. *Id*. The evidence was sufficient to permit a rationale jury to find the essential

elements of the crime beyond a reasonable doubt. *Id*. at 19-20. Respondent argues

that Stevens cannot reasonably maintain the robbery occurred independently of his

participation and nothing indicates he abandoned the robbery or tried to prevent it. *Id*.

at 20. Respondent concludes there was no factual basis for his claim of independent

act. *Id*.

Again, Respondent's assertions are well-taken. Assuming Stevens exhausted

this ground, he has not shown the state court's ruling resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law,

or that it was based on an unreasonable determination of the facts in light of the

evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2). To the extent Stevens again

argues that his sentence exceeds the statutory maximum, his argument lacks merit

because, as explained in the analysis of Ground 3, *supra*, his offense was punishable by up to life in prison and he received a prison sentence of thirty (30) years. To the extent Stevens challenges the evidence supporting his conviction on Count 1, that argument also lacks merit. As acknowledged by the post-conviction trial court, the evidence presented at trial was overwhelming. Doc. 10 Ex. O at 18. This ground should be denied.

### <u>Ground 5</u>: Sentence Exceeds Statutory Maximum – Burglary of Structure

In his fifth ground, Stevens asserts he was charged with burglary of a structure but he should have been charged with only trespassing or attempted burglary and, therefore, his sentence exceeds the statutory maximum. Doc. 6 at 6. Stevens explains that he and his co-defendant "walked onto the property of Rickards High School through open gates," they "were caught attempting to break into one of the locker rooms," and the record reflects "there was never a completed burglary upon the ground of the school." *Id*.

Respondent contends that, in this ground, Stevens echoes Grounds 3 and 4, and presents a non-cognizable issue of state law. Doc. 10 at 20. Respondent argues there is no basis for Stevens to attack the length of his sentence. *Id*. Respondent explains that burglary of a structure with person assaulted is a first degree felony punishable by up to life in prison under section 810.02(2)(a), Florida Statutes (2003). *Id*. Stevens received a sentence of thirty (30) years in prison on this count, within the statutory maximum. *Id*.

Respondent further argues that, to the extent Stevens argues he should have been charged with trespassing or attempted burglary, Stevens again does not present a cognizable ground for habeas relief. Doc. 10 at 20. Respondent points out that, at no time did Stevens claim the prosecutor's decision regarding which charges to file was improperly made or that he did not have fair notice of those charges. *Id*. Moreover, given Stevens' admissions that he walked onto the school grounds through open gates and was caught attempting to break into a locker room, Stevens' argument is not clear. *Id*. at 21. Respondent asserts the evidence was undisputed that Stevens was found by the school custodian as he and his co-defendant attempted to use a hacksaw to get into the girls' locker room. *Id*.; *see* Doc. 10 Ex. B at 43-44. Stevens and his co-defendant assaulted the custodian, and ultimately fled the premises by jumping the fence; several walkie-talkies had been taken from the custodial room and were found in the defendants' knapsack. Doc. 10 at 21; *see* Doc. 10 Ex. B at 53-57. Thus, this evidence was enough for a jury to reasonably conclude Stevens entered the school with the intent to commit a crime (theft) and in the course of the burglary assaulted the custodian. Doc. 10 at 21.

Respondent's points are well-taken. Assuming Stevens exhausted this ground, he has not shown the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2). To the extent Stevens argues the State of Florida should have charged him with only trespassing or attempted burglary, Stevens does not

present a cognizable ground for federal habeas relief. And, again, to the extent

Stevens is challenging the sufficiency of the evidence to support his convictions, as

acknowledged by the post-conviction trial court, the evidence presented at trial was

overwhelming. Doc. 10 Ex. O at 18. This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner is not entitled to federal habeas relief. The

amended § 2254 petition (Doc. 6) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a certificate is

issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal

must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000)

(explaining substantial showing) (citation omitted). Therefore, the Court should deny a

certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the

court may direct the parties to submit arguments on whether a certificate should issue."

The parties shall make any argument as to whether a certificate should issue by

objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner's amended § 2254 petition (Doc. 6).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 31, 2013.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**